**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BJORN J. GRUENWALD,**

**Plaintiff,**

**v.**

**SCOTTSDALE INS. CO.,**

**Defendant.**

**Case No. 2:25-cv-751**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

A court awarded Bjorn J. Gruenwald a nearly million-dollar judgment against an entity known as Hilbert Technology, Inc. Over two years later, the judgment remains unpaid. Mr. Gruenwald says Hilbert was insured under a policy issued by Scottsdale Insurance Company that covers the judgment, so he filed this suit seeking to compel Scottsdale to pay him.

Scottsdale moves to dismiss Mr. Gruenwald's Amended Complaint. (Mot., ECF No. 13.) That Motion is fully briefed and ripe for decision. For the reasons below, Scottsdale's Motion is **GRANTED**.

## I. FACTUAL BACKGROUND[1]

On September 26, 2008, Mr. Gruenwald executed three agreements with Hilbert to secure a working capital loan. (Am. Compl., ¶ 9.) Four years later, in

[1] This factual background is based on Mr. Gruenwald's Amended Complaint (Am. Compl., ECF No. 9). When considering Scottsdale's Motion, the Court construes the factual allegations in the light most favorable to Mr. Gruenwald. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

September 2012, Mr. Gruenwald sued Hilbert in Pennsylvania state court (the "Bucks County Action"), alleging that it had breached the three agreements. (*Id.*, ¶ 10.) During discovery in the Bucks County Action, Hilbert disclosed that it had a Business and Management Indemnity policy with Scottsdale. (*Id.*, ¶ 11.)

Mr. Gruenwald was successful in the Bucks County Action – he received a "Decision/Verdict" against Hilbert awarding him $594,216.00 in damages plus 6% simple interest to be calculated from June 30, 2013. (*Id.*, ¶ 12.) The court issued a judgment on May 17, 2023, in the amount of $976,297.00 ("Judgment"). (*Id.*, ¶ 13.) Hilbert's appeal of the Judgment was subsequently dismissed. (*Id.*, ¶ 14.)

Hilbert has not paid any of the Judgment to Mr. Gruenwald. (*Id.*, ¶ 16.) He alleges that Scottsdale breached its contract with Hilbert by refusing to indemnify Hilbert for the Judgment and by not paying the Judgment amount to him. (*Id.*, ¶ 18.) He now brings seven claims[2]:

> **Counts I, V, VII** – for Declaratory Judgment under federal, Pennsylvania, and New York law;
>
> **Count II** – for a Creditor's Bill under Ohio law;
>
> **Count IV** – for Garnishment/Attachment Execution under Pennsylvania law;
>
> **Count VI** – to recover/garnish sums owed to a judgment debtor under New York law; and
>
> **Count IX** – for unjust enrichment.

(*See generally id.*)

[2] In response to the Motion to Dismiss, Mr. Gruenwald "withdrew" his Ohio declaratory judgment claim (Count III) and breach of contract claim (Count VIII). (Resp., ECF No. 18.) Scottsdale's Motion is **GRANTED** on those two claims.

## II. ANALYSIS[3]

Scottsdale moves to dismiss three of Mr. Gruenwald's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Mot., PAGEID # 215.) It also moves to dismiss all of Mr. Gruenwald's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.*)

### A. Dismissal Under Rule 12(b)(1)

Scottsdale argues the Court lacks subject matter jurisdiction over Mr. Gruenwald's claims for unjust enrichment, garnishment/attachment execution under Pennsylvania law, and declaratory judgment under Pennsylvania law because Mr. Gruenwald does not have standing. (Mot., PAGEID # 220.)

Article III "[s]tanding is a jurisdictional requirement," and "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—Plaintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). That said, the Court "must accept as true all allegations in

---

[3] After reviewing the parties' briefing on the Motion to Dismiss, the Court ordered them to file supplemental briefs concerning whether Hilbert is a necessary and indispensable party under Rule 19. (ECF No. 20.) The parties did so and agreed that the Court should not require Hilbert's joinder. (*See* ECF Nos. 21 and 22.) Seeing as neither party raised this non-jurisdictional issue and both parties are aligned, the Court sees no need or obligation to engage in further analysis. *See, e.g.*, *Republic of Phil. v. Pimentel*, 553 U.S. 851, 861 (2008) (holding a court *may* consider Rule 19 concerns *sua sponte*).

the complaint, and must construe the complaint in favor of the plaintiff." *Haskell v. Washington Twp.*, 588 F. Supp. 528, 530 (S.D. Ohio 1984) (Rice, J.).

To have Article III standing, a plaintiff must establish: "(1) that [he has] suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) that a causal link exists between the injury and the conduct complained of, ... and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Midwest Media Prop., LLC v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007) (internal quotations and citations omitted).

Standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) (citation omitted). Even so, this inquiry often depends on the nature and source of the claims and requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (asking, among other questions, whether the claimed injury is "too abstract, or otherwise not appropriate, to be considered judicially cognizable"; whether "the line of causation between the illegal conduct and injury [is] too attenuated"; and whether "the prospect of obtaining relief from the injury as a result of a favorable ruling [is] too

speculative"), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Here, Mr. Gruenwald has satisfied his burden to show there is Article III standing. First, he has alleged an injury in fact. Accepting his allegations as true, Scottsdale insured Hilbert for at least some of the Judgment and has failed to pay. (Am. Compl., ¶ 17.) Second, Mr. Gruenwald has met his modest burden of showing causation. *See Passmore v. Fid. Brokerage Servs., LLC*, 767 F. Supp. 3d 537, 544 (E.D. Mich. 2025) ("At the pleading stage, the plaintiff's burden of alleging that their injury is fairly traceable to the defendant's challenged conduct is relatively modest." (citation omitted)). Irrespective of whether he will succeed on the merits, he has alleged that his injury flows from Scottsdale's failure to pay the Judgment pursuant to its contract with Hilbert. (Am. Compl., ¶ 18); *see Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 592 (6th Cir. 2022) ("Any harm flowing from the defendant's conduct, even indirectly, is said to be 'fairly traceable.'" (citation omitted)). And third, Mr. Gruenwald has pleaded that, if this Court issues judgment in his favor, Scottsdale will be obliged to pay the Judgment and Mr. Gruenwald's injury will be redressed. (*See generally* Am. Compl.) Mr. Gruenwald has, at a bare minimum, alleged that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation modified).

Mr. Gruenwald has alleged the requisites for Article III standing, and Scottsdale's arguments to the contrary are unpersuasive.

**B. Dismissal Under Rule 12(b)(6)**

All of Mr. Gruenwald's claims hinge on whether Hilbert's insurance policy with Scottsdale covers the Judgment. Scottsdale argues it does not. If Scottsdale is right, none of Mr. Gruenwald's claims survive.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471,

476 (6th Cir. 2007). Additionally, in reviewing such a motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### 1. Choice of Law

Scottsdale argues New York law applies to the interpretation of the policy. (Mot., PAGEID # 224.) However, as a general matter, federal courts sitting in diversity apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). That principle extends to the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). Under Ohio's choice-of-law rules, "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken." *Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 677 (S.D. Ohio 2019) (Smith, J.) (quoting *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006)). "This is so even where, as here, the contract at issue contains a choice-of-law clause." *Ahkeo Labs LLC v. Plurimi Inv. Managers, LLP*, 293 F. Supp. 3d 741, 750 (N.D. Ohio 2018). "[T]he party asserting the application of the foreign law has the initial burden to demonstrate such a conflict." *Lorad, LLC v. Azteca Milling, L.P.*, 670 F. Supp. 3d 470, 486 (N.D. Ohio 2023) (citing *Cross v. Carnes*, 724 N.E.2d 828, 836 (11th Dist. 1998)).

Scottsdale has not identified a conflict between New York and Ohio law, so no choice-of-law analysis is necessary. *See Mendoza v. J.M. Smucker Co.*, 674 F. Supp.

3d 439, 449 (N.D. Ohio 2023) ("In Ohio, 'an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken.'" (citation omitted)). Nor is the Court aware of any conflict that would counsel a different result here. *Compare FirstEnergy Generation, LLC v. Valley Forge Ins. Co.*, 487 F. Supp. 3d 630, 634 (N.D. Ohio 2020) (applying Ohio law) ("The Court is to look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy.") *with Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (applying New York law) ("[T]he words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."). The Court will apply Ohio law to interpret the policy.

### 2. The Insurance Policy

Under Ohio law, insurance policies are construed like any other written contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006) (applying Ohio law). Courts are to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "An insurance contract will only require interpretation if the applicable language is ambiguous—that is, open to more than one interpretation." *Scott*, 417 F. Supp. 2d at 932. When there is ambiguous language in an insurance contract, such language must be "construed strictly against the insurer and liberally in favor of the insured." *Id.* That said, "liberal construction cannot be used to create an ambiguity where one does not exist." *Id.* "If the terms of a policy are clear and

unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Id.* at 933.

Scottsdale, the insurer, and Hilbert, the insured, entered into a policy for the relevant time period. (ECF No. 9-1, PAGEID # 134.) The policy contains an "employee insuring clause," which states:

> Insurer shall pay *the Loss* of the Insureds which the Insureds have become legally obligated to pay by reason of an *Employment Practices Claim* first made against the Insureds during the Policy Period or, if elected, the Extended Period, and reported to the Insurer pursuant to Section E.1. herein, for an *Employment Practices Wrongful Act* taking place prior to the end of the Policy Period.

(*Id.*, PAGEID # 143 (emphasis added).) An "employment practices claim" includes:

> [A] civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an Insured seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom.

(*Id.*, PAGEID # 144.) And an "employment practices wrongful act" includes a "breach of an actual or implied employment contract[.]" (*Id.*, PAGEID # 144.) If Hilbert became obligated to pay by reason of an "employment practices claim" because of an "employment practices wrongful act,"[4] the policy required Scottsdale to pay the "loss," which is defined as:

> [T]he damages, judgments, settlements, front pay and back pay, pre-judgment or post judgment interest awarded by a court, and Costs, Charges and Expenses incurred by any of the Insureds.

(*Id.*, PAGEID # 145.) But the term "loss" expressly excludes, among other things:

---

[4] There is no dispute that Mr. Gruenwald was Hilbert's employee as defined in the policy.

> e. amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract.

(*Id.*, PAGEID # 145.)

Here, Mr. Gruenwald was awarded a $976,297.00 Judgment. (Resp., ECF No. 18, PAGEID # 259.) That Judgment is comprised of a $594,216.00 principal amount owed as a result of Hilbert's breach of contract and $382,081.00 in pre-judgment interest based on the principal. (*Id.*) Mr. Gruenwald concedes that Scottsdale is not required to pay the principal portion of the Judgment because that amount was awarded pursuant to an employment contract so it is excluded from being a "loss" under the policy, but he argues Scottsdale must pay the pre-judgment interest. (*Id.*) He is wrong.

Even though a "loss" under the policy includes damages, judgments, settlements, front pay and back pay, and pre-judgment or post judgment interest awarded by a court, this language must be read in conjunction with the express exclusion that "loss" does not include any amounts owed under an employment contract. Thus, any "loss" (including pre-judgment interest) based *solely* on an amount owed under an employment contract is not recoverable. Put another way, but for the undisputably excluded principal amount here, there would be no pre-judgment interest.

The Ohio Supreme Court addressed a similar issue in *World Harvest Church v. Grange Mut. Cas. Co.*, 68 N.E.3d 738 (Ohio 2016). There, the Supreme Court considered whether an insurance policy's clause covering post-judgment interest could reasonably be construed as an agreement to pay post-judgment interest on

non-covered claims. *Id*. at 742. In that case, the lower court held that the insurer was required to indemnify the insured for post-judgment interest on non-covered claims based on a clause in the policy that stated:

> We will pay, with respect to … any "suit" against an insured we defend: … All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

*Id*. at 746. But the Ohio Supreme Court reversed the lower court, concluding that the insurance contract had to be read as a whole – because the underlying suit was not one to which the insurance applied, the insurer did not have to pay interest on the judgment. *Id*. at 746–47.

Viewing the Scottsdale policy in this case as a whole leads to the same result. Scottsdale is obligated to pay a "loss," which includes pre-judgment interest. But the policy does not apply to amounts owed under an employment contract. So, Scottsdale is not obligated to pay pre-judgment interest on amounts owed under an employment contract. A different result would require Scottsdale to pay a portion of a "loss" that it expressly contracted out of paying.

Neither the $594,216.00 principal nor the $382,081.00 pre-judgment interest are recoverable under the policy. Because the policy does not obligate Scottsdale to pay Mr. Gruenwald, Scottsdale's Motion to Dismiss under Rule 12(b)(6) is **GRANTED**, and his claims are **DISMISSED**.

### 3. Offensive Collateral Estoppel

Mr. Gruenwald argues that Scottsdale is estopped from arguing that its policy does not cover pre-judgment interest. (Resp., PAGEID # 256.) A federal

district court has "broad discretion to determine" whether to apply collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008).

Ohio law permits non-mutual offensive collateral estoppel "[w]here a 'party defendant clearly had his day in court on the specific issue brought into litigation within the later proceeding[.]'" *In re E. I. du Pont de Nemours and Company C-8 Pers. Inj. Litig.*, 54 F.4th 912, 922 (6th Cir. 2022) (citing *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983)). That said, "an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson*, 443 N.E.2d at 985. The "burden of pleading and proving the identity of the issues currently presented and the issues previously decided rests on the party asserting the estoppel." *Am. Fiber Sys., Inc. v. Levin*, 928 N.E.2d 695, 701 (Ohio 2010).

Mr. Gruenwald relies on *Michael Feiz Med. Corp. v. Scottsdale Insurance Co.*, an unpublished Ninth Circuit decision applying California law, to argue that Scottsdale is estopped from disputing that the policy covers pre-judgment interest on an amount owed under an employment contract. 688 F. App'x 503 (9th Cir. 2017). In that case, the Ninth Circuit found that a different Scottsdale insurance policy defined "loss" to expressly refer to "'damages' and 'pre-judgment ... interest' separately," so that policy provided coverage for pre-judgment interest owed on an

employment contract obligation even though that policy excluded coverage for amounts owed under an employment contract. *See generally id*. The Ninth Circuit stated:

> If the Policy treated pre-judgment interest as part and parcel of damages, there would have been no need to mention prejudgment interest in the promise of coverage. Therefore, because prejudgment interest is expressly included in the policy's coverage, and there is no "plain and clear" language excluding that coverage, [the insurer] must indemnify [the insured] for amount of the prejudgment interest award.

*Michael Feiz Med. Corp.*, 688 F. App'x at 505.

Mr. Gruenwald has not proved that the identical issue was litigated, directly determined, and essential to the judgment in the prior action. First, the Ninth Circuit applied California law. Even though Mr. Gruenwald argues that California law and Ohio law apply similar rules of construction, the Ninth Circuit did not view the insurance policy as a whole when it looked at the specific contract provision at issue. Second, Mr. Gruenwald has not shown that Scottsdale could have foreseen that the Ninth Circuit's decision would be used collaterally against it in a future case by a different plaintiff in Ohio. *See Goodson*, 443 N.E.2d at 986 ("Collaterally estopping a party from relitigating an issue previously decided against it violates due process where it could not be foreseen that the issue would subsequently be utilized collaterally[.]"). Third, Mr. Gruenwald has not shown that Scottsdale had the same incentive to litigate this issue as it does now. *See id*. (noting collateral estoppel is improper "where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein").

Even if Mr. Gruenwald satisfied his burden, it remains that "[t]he major risk linked to [collateral estoppel] is that of an erroneous determination in the first case." *Id.*; *see also id.* n.14 ("'The central danger lies in the simple but devastating fact that the first litigated determination of an issue may be wrong.'" (citation omitted)). As explained above, the Ninth Circuit failed to consider the insurance policy as a whole, as required by Ohio law. For that reason, this Court need not follow the Ninth Circuit's unpublished, non-binding decision.

The Court will not apply offensive collateral estoppel here.

## III. CONCLUSION

For the above reasons, Scottsdale's Motion to Dismiss (ECF No. 13) is **GRANTED**. The Clerk is **DIRECTED** to enter final Judgment and close this case.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**